IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MUNKSJÖ PAPER AB, | ) | Case No. 3:16-cv-270 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| BEDFORD MATERIALS CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. Introduction

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 16.) The Motion has been fully briefed (*see* ECF Nos. 17, 18) and is ripe for disposition.

This case arises from Defendant Bedford Materials Co., Inc.'s ("Bedford") alleged failure to make timely payments owed to Plaintiff Munksjö Paper AB ("Munksjö") pursuant to a long-term supply agreement and two promissory notes. Bedford now asks this Court to dismiss Count I, Count III, and Count IV of Munksjö's four-count Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Bedford has not moved to dismiss Count II.[1]

---

[1] While Bedford's Brief in Support of Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted includes a final section that briefly references the dismissal of Count II (*see* ECF No. 17 at 18-19), Bedford's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) asks for the dismissal of only Count I, Count III, and Count IV. The language in Bedford's Brief regarding the dismissal of Count II does not provide any Count II-specific argument, and this passing reference to the dismissal of Count II in the brief is contradicted by the remainder of the brief, which asks only for the dismissal of Count I, Count III, and Count IV. (*See* ECF No. 17 at 19-20.) Moreover, Bedford's proposed order, likewise, asks this Court to dismiss only

For the reasons that follow, this Court will **GRANT IN PART** and **DENY IN PART** Bedford's Motion.

## II.     Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1) because, according to the allegations of the Amended Complaint, Munksjö is a Swedish company with its principal place of business in Sweden, Bedford is a Pennsylvania corporation with its principal place of business in the Commonwealth of Pennsylvania, and the amount in controversy exceeds $75,000. (ECF No. 13 ¶¶ 1-3.) The Court has personal jurisdiction because Bedford has established sufficient minimum contacts with Pennsylvania and/or the claims asserted are related to or arise out of Bedford's contacts with Pennsylvania. (*Id.* ¶ 4.) Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged events or omissions giving rise to Munksjö's claims occurred in the Western District of Pennsylvania. (*Id.* at ¶ 8.)

## III.    Procedural History

Munksjö initiated the present matter by filing its original Complaint on December 27, 2016. (ECF No. 1.) In response, Bedford filed its first Motion to Dismiss and an accompanying brief on May 26, 2017. (ECF Nos. 9, 10.)

Mooting this first Motion to Dismiss prior to a decision by this Court, Munskjö filed its Amended Complaint on June 15, 2017. (ECF No. 13.) Munksjö organized its Amended Complaint into four counts—all alleging claims arising out of business transactions

---

Count I, Count III, and Count IV—not Count II. (*See* ECF No. 16-1.) Bedford's omission of a request to dismiss Count II is further discussed below. *See supra* Part VI.D.

2

between Munksjö and Bedford. Specifically, the Amended Complaint alleges claims for (1) breach of the Long Term Supply Agreement by Bedford for failure to make timely payments, (2) breach of the Promissory Note and the First Amendment to the Promissory Note by Bedford for failure to make timely payments, (3) breach of the Long Term Supply Agreement by Bedford relating to advance inventory held by Munksjö, and (4) unjust enrichment by Bedford for retaining Munksjö's product without payment. (*Id.* ¶¶ 31-64.)

On June 29, 2017, Bedford responded by filing its Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) and its Brief in Support of Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted. (ECF No. 17.) Lastly, Munksjö filed its Brief in Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted on July 19, 2017. (ECF No. 18.)

## IV. Factual Allegations Set Forth in the Amended Complaint

The following facts, which the Court accepts as true for the purposes of deciding Bedford's Motion to Dismiss, are alleged in the Amended Complaint. (*See* ECF No. 13.)

On or about March 1, 2013, Munksjö entered into a Long Term Supply Agreement ("LTS Agreement") with Bedford. (*Id.* ¶ 6.) Broadly, Bedford agreed to purchase "thermally-upgraded kraft paper" ("Product") from Munksjö at preferred pricing levels for five years. (*Id.*) Despite being dated "December 21, 2012," (*see* ECF 13-1, Ex. A at 1), the LTS Agreement was not made effective until March 12, 2013. (ECF No. 13 at 2 n.1.)

Under the terms of the LTS Agreement, Bedford agreed to order a minimum of 60% of its yearly Product requirement from Munksjö. (*Id.* ¶ 7.) Munksjö agreed to maintain two

3

to three months' worth of advance inventory of the Product. (*Id.*) The LTS Agreement provides that orders would be made according to the "usual customary practices of [the parties]." (*Id.* ¶ 8; ECF No. 13-1, Ex. A ¶ 3.) Munksjö would supply Bedford with the Product and subsequently invoice Bedford for the supplied Product. (ECF No. 13 ¶ 8.) Bedford agreed to pay all invoices within 60 calendar days of the date of the invoice. (ECF No. 13 ¶ 8; ECF No. 13-1, Ex. A ¶ 5.A.) Bedford also agreed to pay interest on all past due invoices equal to the greater of 0.9% per month or the highest rate allowed by law. (ECF No. 13 ¶ 9; ECF No. 13-1, Ex. A ¶ 5.B.)

Since the implementation of the LTS Agreement, Munksjö has provided the Product to Bedford as specified under the LTS Agreement and has issued invoices for payment for the Product. (ECF No. 13 ¶ 10.) However, in 2013, Bedford failed to timely make payments on "several" invoices, resulting in Bedford becoming delinquent under the terms of the LTS Agreement. (*Id.* ¶ 11.) From that first failure to make timely payments until at least the filing of the Amended Complaint, Bedford has "continually made late and/or no payment on invoices" issued by Munksjö, resulting in a past due and owing balance of $932,372.44, including interest. (*Id.* ¶ 12; ECF No. 13-1, Ex. B.)

To accommodate Bedford's delinquency under the LTS Agreement, on March 12, 2013, Munksjö agreed to remove $750,000 from accounts receivable liability and transform that same amount into the Promissory Note. (ECF No. 13 ¶ 14; ECF No. 13-1, Ex. C.) The Promissory Note states that, in the event of default,[2] Munksjö may immediately declare the

---

[2] Default occurs when "(a) [Bedford] shall fail to pay when due any amounts under this Note" or "(b) [t]he occurrence of an Event of Default under that certain Long Term Supply Agreement

4

unpaid principal balance and accrued interest to be due. (ECF No. 13 ¶¶ 15-16; ECF No. 13-1, Ex. C.) The Promissory Note further provides for a "late fee" equal to 5% amounts paid 10 days or more late and provides Munksjö with the option to impose 18% fixed interest per annum on the unpaid principal balance of the Promissory Note in the event of a default. (ECF No. 13 ¶ 17; ECF No. 13-1, Ex. C.) Under the Promissory Note, Bedford also agreed "to pay all costs, including but not limited to attorneys' fees, incurred by [Munksjö] in connection with collecting or enforcing an obligation of [Bedford] to [Munksjö] hereunder." (ECF No. 13 ¶ 18; ECF No. 13-1, Ex. C.)

On March 2, 2016, Munksjö further agreed to accommodate Bedford's delinquency by executing the First Amendment to the Promissory Note ("First Amendment"). (ECF No. 13 ¶ 19; ECF No. 13-1, Ex. D.) The First Amendment modified Bedford's payment obligation, deferring the principal amount due until December 21, 2018, with principal payments of $150,000 plus all accrued interest due on or before each of December 21, 2016, December 21, 2017, and December 21, 2018. (ECF No. 13 ¶ 20; ECF No. 13-1, Ex. D.)

As of December 21, 2016, Bedford has failed to make payment pursuant to the Promissory Note and the First Amendment as required by their terms. (ECF No. 13 ¶ 21.)

Additionally, under the LTS Agreement, Munksjö manufactured and maintains two to three months' advance inventory of the Product ("Advance Inventory"). (*Id.* ¶ 22.) Because the Product is a unique specialty electrotechnical paper specifically manufactured for Bedford, Munksjö is unaware of any alternate buyer for the Product. (*Id.* ¶¶ 23-24.)

---

between Munksjö Paper AB and Bedford Materials Co., Inc. dated March 12, 2013." (ECF No. 13 ¶ 16; ECF No. 13-1, Ex. C.)

5

In the spring of 2016, Bedford ceased communications with Munksjö, preventing Munksjö from making arrangements regarding the disposition of Advance Inventory and the delinquent invoices. (Id. ¶ 25.) At the time the Amended Complaint was written, Munksjö had in excess of $963,858.90 worth of the Product that it manufactured and maintained specifically for Bedford, which is unlikely to be sold. (Id. ¶ 27.)

## V. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[3] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim

---

[3] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

6

are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## VI. Discussion

Bedford has moved to dismiss Count I, Count III, and Count IV for failure to state a claim upon which relief may be granted. (*See* ECF No. 17 at 4-18.) Bedford also included a "catchall" request for the dismissal of Count II, Count III, and Count IV in its brief. (*See id.* at 18-19.) The Court will address each of Bedford's arguments in turn.

### A. Count I Sufficiently Alleges a Claim for Breach of Contract

Bedford first asserts that Count I of the Amended Complaint should be dismissed because it "is premised on the speculative, nonconcrete, allegations that 'Bedford has ceased purchasing sixty percent (60%) of the Product it requires as mandated by the Agreement, and has not provided any assurances that Bedford will comply with this requirement in the future.'" (ECF No. 17 at 4 (quoting ECF No. 13 ¶ 35).) Bedford also argues that, in the alternative, Count I is not ripe for adjudication. (*Id.* at 8.) The Court is not persuaded by either of Bedford's arguments.

7

While Bedford may certainly question whether Munksjö can produce sufficient facts to support its allegations through a motion for summary judgment or argue the credibility of Munksjö's evidence at trial, the Court holds that Munksjö has alleged sufficient, presumptively true factual content to allow the Court to draw the reasonable inference that Bedford is liable for breach of the LTS Agreement. *See UPMC v. CBIZ, Inc.*, Case No. 3:16-cv-204, 2017 WL 4357984, at *8 (W.D. Pa. Sept. 29, 2017) (citing *Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786).

To establish a breach of contract claim under Pennsylvania law,[4] a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Seneca Resources Corp. v. S & T Bank*, 122 A.3d 374, 379 (Pa. Super. Ct. 2015) (quoting *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. Ct. 2013)). Munksjö's Amended Complaint includes sufficient factual allegations to reasonably infer that each of these elements is satisfied. *UPMC*, 2017 WL 4357984, at *8 (citing *Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786).

First, the Amended Complaint not only alleges the existence of the LTS Agreement but also includes the LTS Agreement itself as an exhibit. (*See* ECF No. 13 ¶¶ 6-13; ECF No.

---

[4] The Court observes that the LTS Agreement expressly provides for the application of Pennsylvania law. (ECF No. 13-1, Ex. A ¶ 16.) While neither party provided argument regarding whether Pennsylvania substantive law governs the LTS Agreement, the Court holds that the contractual choice of law provision in the LTS Agreement is enforceable because Bedford is a Pennsylvania corporation with its principal place of business in Pennsylvania, making Pennsylvania law a reasonable choice of law by the parties, and nothing before the Court suggests that the fundamental policies of any other state overrides Pennsylvania's interest. *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)); *Schifano v. Schifano*, 471 A.2d 839, 843 n.5 (Pa. Super. Ct. 1984); *Hadeed v. Advanced Vascular Resources of Johnstown, LLC*, Case No. 3:15-cv-22, 2017 WL 4998663, at *7 n.12 (W.D. Pa. Oct. 30, 2017); Restatement (Second) of Conflict of Laws § 187 (Am. Law. Inst. 1971).

13-1, Ex. A.) Second, despite Munksjö purportedly fulfilling its obligations under the LTS Agreement, Munksjö alleges that Bedford breached its duties under the LTS Agreement by "failing or refusing to make timely payments due to Munksjö under the Invoices." (ECF No. 13 ¶¶ 33-34.) Third, the Amended Complaint alleges that "Munksjö has suffered damages in the amount of $932,372.44, plus interest accruing and lost profits in an unliquidated amount." (*Id.* ¶ 36.) The Amended Complaint also features numerous other details that, if assumed to be true, lead to the reasonable inference that Bedford breached the LTS Agreement. (*See id.* ¶¶ 1-36.) Therefore, Munksjö has adequately pleaded the elements to sustain a breach of contract claim under Pennsylvania law. *See Seneca*, 122 A.3d at 379 (quoting *McCausland*, 78 A.3d at 1101).

Bedford offers extensive argument regarding the Advance Inventory, lack of a request for adequate assurance of performance, the purportedly speculative nature of Munksjö's allegations, and ripeness. (*See* ECF No. 17 at 4-8.) Bedford's arguments may prove successful at a later time and under a different procedural posture, but not at this early stage. *See Connelly*, 809 F.3d at 786. Simply stated, Munksjö alleges that Bedford failed to timely pay invoices due pursuant to the LTS Agreement, therein causing Munksjö harm. (*See* ECF No. 13 ¶¶ 33-36.) Munksjö may eventually fail to establish these allegations, but the Federal Rules of Civil Procedure do not require detailed pleading, and the presumptively true allegations of the Amended Complaint sufficiently plead Count I under the Federal Rules. *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786.

## B. Count III Sufficiently Alleges a Claim for Breach of Contract

Bedford next offers numerous arguments in favor of the dismissal of Count III. (*See* ECF No. 17 at 8-16.) These arguments largely overlap and/or supplement Bedford's arguments with respect to Count I. (*See id.*) Once again, these arguments may be meritorious at a later stage; however, as this Court has already discussed in regard to Count I, Munksjö's presumptively true allegations, although imperfect, are sufficient at this early stage. *See UPMC*, 2017 WL 4357984, at *8 (citing *Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786).

Bedford's argument regarding the applicability of Pennsylvania's enactment of the Uniform Commercial Code, 13 Pa. Cons. Stat. and Cons. Stat. Ann. §§ 1101-9809, the failure to make a request for adequate assurance, and the lack of allegations sufficient to establish an anticipatory repudiation are of significant merit. (*See* ECF No. 17 at 8-16.) Nevertheless, when the veracity of Munksjö's allegations are assumed and all reasonable inferences are made in favor of Munksjö, *see Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786, this Court concludes that Count III of the Amended Complaint does not rely on Bedford having anticipatorily repudiated the LTS Agreement.

Rather, much like Count I, Count III is sufficient at this early stage because it alleges an *actual* breach of the LTS Agreement. (ECF No. 13 at ¶¶ 47-56.) Specifically, Munksjö directly alleges that, in violation of its obligations under the LTS Agreement, Bedford failed to pay for Product delivered to Bedford and ceased communications with Munksjö. (*See id.*) Whether Munksjö truly sustained $963,858.90 of damages as a result of Bedford's alleged breach, whether and when invoices were issued to Bedford by Munksjö, whether

Bedford paid the invoices, whether Bedford's alleged breach was "material," whether Bedford refused to communicate with Munksjö, and any other disputes regarding a lack of evidence to support Munksjö's allegations or the veracity of Munksjö's allegations can certainly be raised by Bedford at the summary judgment stage and trial stage respectively. However, at the pleading stage, Munksjö's presumptively true allegation that Bedford breached the LTS Agreement through non-payment and refusal to communicate with Munksjö and the reasonable inferences therefrom possess the "facial plausibility" of liability required by the Federal Rules. *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786.

### C. Count IV is Dismissed Because Unjust Enrichment Cannot Provide Munksjö a Basis for Relief

In regard to Count IV of the Amended Complaint, Bedford argues that Munksjö may not plead a claim for unjust enrichment *and* claims for breach of contract because the parties' relationship is based on an express written contract, therein barring a claim for unjust enrichment. (*See* ECF No. 17 at 16-18.) Bedford acknowledges that, as a general matter, pleadings may contain alternative counts, but suggests that "the majority of courts" have not allowed parties to plead unjust enrichment in the alternative under the circumstances of the present case, i.e., when a written agreement that encompasses the entire relationship between the parties is attached to the complaint and the parties do not dispute the validity or enforceability of the agreement. (*Id.* at 17-18.)

The Court agrees with Bedford that Count IV should be dismissed. Not only do "the majority of courts," as represented by the non-binding trial-level decisions cited by

11

Bedford,[5] hold that parties cannot alternatively plead unjust enrichment and breach of contract claims under the present circumstances, binding precedent from the U.S. Court of Appeals for the Third Circuit does as well. *See Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169-70 (3d Cir. 2014).

Under Pennsylvania law, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." *Id.* (quoting *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)). Both parties agree that claims for unjust enrichment and breach of contract are contradictory. (*See* ECF No. 17 at 17; ECF No. 18 at 9.) In its brief, "Munksjö acknowledges that no claim for unjust enrichment will lie if the transaction between the parties is governed by the contracts and the conduct of the parties as interpreted under the UCC." (ECF No. 18 at 9.)

However, the parties dispute whether alternative pleading permits Munksjö's unjust enrichment claim to proceed alongside its breach of contract claims. Specifically, Munksjö argues that, "assuming, *arguendo*, no contracts exist, Munksjö is entitled to plead unjust enrichment in the alternative." (*Id.*) While this Court recognizes the appeal of Munksjö's argument based on the language of Federal Rule of Civil Procedure 8(d)(3), binding Third Circuit precedent agrees with Bedford's position. *See Grudkowski*, 556 F.

---

[5] Bedford cites a number of district court opinions from the Third Circuit. *See, e.g., ULC Oil & Gas Field Servs.*, Civil Action No. 2:14-cv-72, 2014 WL 6607280, at *3-*8 (W.D. Pa. Nov. 19, 2014) (Fischer, J.); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa. 2012); *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, Civ. A. No. 10–6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011).

12

App'x at 169-70.

Pleading in the alternative is, of course, permissible under the Federal Rules of Civil Procedure. *See id.*; Fed. R. Civ. P. 8(d)(3). Yet, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski*, 556 F. App'x at 170 n.8 (citing *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 515-16 (E.D. Pa. 2012); *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012)).

Here, as in *Grudkowski*, Munksjö and Bedford "had a contractual relationship, the existence and validity of which [is] not challenged." *Id.* In Bedford's own words, "there is no dispute that the written agreements are valid and enforceable." (ECF No. 17 at 18.) The LTS Agreement, the Promissory Note, and the First Amendment are all attached to the Amended Complaint and govern the relationships of the parties relevant to the instant matter. (*See* ECF No. 13-1., Ex. A, C, D.) Thus, because the relationship between Munksjö and Bedford was governed by the valid and enforceable LTS Agreement, Promissory Note, and First Amendment, unjust enrichment cannot provide Munksjö a basis for relief. *See Grudkowski*, 556 F. App'x at 170.

Munksjö's claim for unjust enrichment, even when pled in the alternative, is properly dismissed. *See id.* at 170 n.8 ("Here, Grudkowski and Foremost had a contractual relationship, the existence and validity of which are not challenged. Thus, Grudkowski's claim for unjust enrichment, even when pled in the alternative, was appropriately dismissed.").

13

## D. Bedford's "Catchall" Request for Dismissal is Denied

In Part III.4 of Bedford's Brief in Support of Motion to Dismiss Amended Complaint, Bedford states that Count II, Count III, and Count IV should be dismissed because these counts "expressly incorporate all of the previous paragraphs of the Complaint" and should be dismissed for "all of the reasons argued above." (ECF No. 17 at 18-19.)

As an initial matter, the Court notes that Bedford's Motion to Dismiss Plaintiff's Amended Complaint—asking for the dismissal of only Count I, Count III, and Count IV—does not move for the dismissal of Count II of the Amended Complaint. (ECF No. 16.) Likewise, Bedford's proposed order asks this Court to dismiss only Count I, Count III, and Count IV—not Count II. (See ECF No. 16-1.) In its brief, Bedford provides no argument to justify the dismissal of Count II beyond this short one-paragraph "catchall" request in Part III.4 *and* the remainder of the brief expressly asks for only the dismissal of Count I, Count III, and Count IV. (*See* ECF No. 17 at 19-20.) Therefore, the dismissal of Count II is arguably not properly raised before this Court. Nevertheless, assuming *arguendo* that Bedford has properly moved to dismiss Count II, the Court sees no basis for such a dismissal and Bedford has offered no cognizable argument to merit the dismissal of Count II.

In regard to the remainder of Bedford's "catchall" request for dismissal in Part III.4 of its brief, the Court has previously analyzed and denied requests to dismiss Count I and Count III of the Amended Complaint, *see supra* Part VI.A and Part VI.B, and will not offer any further discussion here. Count IV of the Amended Complaint is dismissed for the reasons stated *supra* Part VI.C and, likewise, merits no further discussion.

14

## VII. Conclusion

In sum, the presumptively true factual allegations of the Amended Complaint plausibly give rise to entitlement to relief on Count I, Count II, and Count III. Thus, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) will be denied as it pertains to those three counts.

However, Count IV is dismissed because unjust enrichment cannot provide Munksjö a basis for relief. Accordingly, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) is granted as to Count IV.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MUNKSJÖ PAPER AB, | ) | Case No. 3:16-cv-270 |
| --- | --- | --- |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| BEDFORD MATERIALS CO., INC., | ) | |
| Defendant. | ) | |

## ORDER

NOW, this 9th day of January 2018, upon consideration of the Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) is **GRANTED IN PART** and **DENIED IN PART**.

Defendant's Motion is **GRANTED** to the extent that only Count IV of the Amended Complaint is **DISMISSED WITH PREJUDICE**. Defendant's Motion is **DENIED** in all other regards.

BY THE COURT

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE