IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MUNKSJÖ PAPER AB, | ) | Case No. 3:16-cv-270 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| BEDFORD MATERIALS CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I. Introduction

Pending before the Court is Plaintiff's Motion to Dismiss Count III of Defendant's First Amended Answer, Affirmative Defenses, and Counterclaims. (ECF No. 35.) The Motion has been fully briefed (*see* ECF Nos. 36, 38) and is ripe for disposition.

This case arises from disputes involving a long-term supply agreement between Defendant Bedford Materials Co., Inc. ("Bedford") and Plaintiff Munksjö Paper AB ("Munksjö"). Munksjö now asks this Court to dismiss Count III of Bedford's three-count First Amended Answer, Affirmative Defenses and Counterclaims ("Amended Answer") for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because Count III is barred by the gist of the action doctrine. Munksjö has not moved to dismiss Count I or Count II of the Amended Answer.

For the reasons that follow, this Court will **GRANT** Munksjö's Motion.

## II. Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(a)(1) because, according to the Amended Complaint and the Amended Answer, Munksjö is a Swedish company with its principal place of business in Sweden, Bedford is a Pennsylvania corporation with its principal place of business in the Commonwealth of Pennsylvania, and the amount in controversy exceeds $75,000. (ECF No. 13 ¶¶ 1-3; ECF No. 34 ¶¶ 1-3.)

The Court has personal jurisdiction because Bedford has established sufficient minimum contacts with Pennsylvania and/or the claims asserted are related to or arise out of Bedford's contacts with Pennsylvania. (ECF No. 13 ¶ 4; ECF No. 34 ¶ 4.)

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged events or omissions giving rise to Munksjö and Bedford's claims occurred in the Western District of Pennsylvania. (ECF No. 13 ¶ 8; *see generally* ECF No. 34.)

## III. Procedural History

As this Court detailed in a prior opinion, *see Munksjö Paper AB v. Bedford Materials Co., Inc.*, Case No. 3:16-cv-270, 2018 WL 351600, at *1-*2 (W.D. Pa. Jan. 9, 2018), Munksjö initiated the present matter by filing its original Complaint on December 27, 2016. (ECF No. 1.) In response, Bedford filed its first Motion to Dismiss and an accompanying brief on May 26, 2017. (ECF Nos. 9, 10.)

Mooting this first Motion to Dismiss prior to a decision by this Court, Munskjö filed its Amended Complaint on June 15, 2017. (ECF No. 13.) Munksjö organized its Amended Complaint into four counts—all alleging claims arising out of business transactions

between Munksjö and Bedford. Specifically, the Amended Complaint alleges claims for (1) breach of the Long Term Supply Agreement by Bedford for failure to make timely payments, (2) breach of the Promissory Note and the First Amendment to the Promissory Note by Bedford for failure to make timely payments, (3) breach of the Long Term Supply Agreement by Bedford relating to advance inventory held by Munksjö, and (4) unjust enrichment by Bedford for retaining Munksjö's product without payment. (*Id.* ¶¶ 31-64.)

On June 29, 2017, Bedford responded by filing its Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 16) and its Brief in Support of Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted. (ECF No. 17.) This Court dismissed Count IV of Munksjö's Amended Complaint, but, otherwise, denied Bedford's Motion to Dismiss the Amended Complaint through Memorandum Opinion and Order of January 9, 2018. *See Munksjö*, 2018 WL 351600, at *7.

On February 23, 2018, Bedford filed its Amended Answer. (ECF No. 34.) Therein, Bedford alleged three counterclaims against Munksjö: (1) Count I for breach of contract; (2) Count II for anticipatory breach of contract; and (3) Count III for negligent misrepresentation. (*Id.* at 16-20.)

Most pertinent here, on March 5, 2018, Munksjö filed the present Motion to Dismiss Count III of Defendant's First Amended Answer, Affirmative Defenses and Counterclaims and accompanying Brief in Support thereof. (ECF Nos. 35, 36.) Bedford filed its Response in Opposition on March 16, 2018. (ECF No. 38.)

## IV. Factual Allegations Set Forth in the Amended Answer

The following facts, which the Court accepts as true for the purposes of deciding Munksjö's Motion to Dismiss, are alleged in Bedford's Amended Answer. (*See* ECF No. 34.)

Bedford uses thermally-upgraded kraft paper ("Product") as the primary raw material in its manufacturing operations. (*Id.* ¶¶ 6-7.) Munksjö is one of the only companies in the world capable of producing certain grades of this Product. (*Id.* ¶ 8.)

On approximately March 12, 2013, Bedford entered into a Long Term Supply Agreement ("Agreement") with Munkjö, under which Munksjö agreed to supply and Bedford agreed to purchase the Product at preferred pricing levels for five years. (*Id.* ¶ 9.) The preferred pricing provision of the Agreement provides that Munksjö "shall provide B[edford] preferred pricing on the Product[, which] shall be equal to ten percent (10%) less than the lowest price for the Product charged to any other customer of [Munksjö] within the third (60) [sic] days prior to any order from B[edford]." (*Id.* ¶ 10.) The Agreement also expressly required that Munksjö "maintain two to three (2-3) months['] worth of advance inventory of the Product in [Munksjö's] Altoona, Pennsylvania warehouse." (*Id.* ¶ 11.)

Munksjö was on notice for the reason(s) for this advance inventory provision at all times and knew that, if Munksjö failed to timely supply Bedford with its requirements, that Bedford's business may be interrupted, inevitably leading to an interruption of manufacturing operations of Bedford's largest customer and the loss of millions of dollars to Bedford's customer for which Bedford might be held liable. (*Id.* ¶¶ 13-16.) Munksjö was

also on notice that such a resulting liability for Bedford "could effectively put Bedford out of business." (*Id.* ¶ 17.)

In or around the summer of 2015, Munksjö failed to stock 2-3 months of advance inventory in Altoona, Pennsylvania. (*Id.* ¶ 20.) Munksjö failed to give any advanced warning to Bedford as to this deficiency and, instead, Bedford was simply informed that no Product was available when Bedford sought to fulfill its own customer's orders. (*Id.* ¶ 21.) Due to this lack of Product from Munksjö, Bedford could only meet its obligations to its own customers and mitigate its damages by seeking out an alternative source of Product, which required paying above-market prices and paying cash on delivery ("COD"). (*Id.* ¶¶ 22-24.)

The alternative source that Bedford purchased Product from was a mill in Fitchburg, Massachusetts known as "Crocker." (*Id.* ¶ 25.) The Crocker mill permanently closed down in late 2015—a closure of which Munksjö was aware and which Munksjö knew meant that that the Crocker mill could not be an alternative source for Product for Bedford in the future. (*Id.* ¶¶ 26-27.) Prior to the closure of the Crocker mill, Bedford extensively investigated a potential purchase of the Crocker mill to ensure a reliable source of Product in the future. (*Id.* ¶ 28.) Munskjö was aware of Bedford's potential desire to purchase the Crocker mill and knew that Bedford would likely terminate or fail to renew the Agreement with Munksjö were Bedford to purchase the Crocker mill. (*Id.* ¶¶ 29-30.)

From July 2015 through November 2015, Bedford and Munksjö engaged in numerous e-mails, phone calls, and in-person meetings in an effort to mend their strained relationship. (*Id.* ¶32.) The "pervasive message" from these various communications was

that Munksjö would never again fail to have stock on hand in Altoona, Pennsylvania because the results would be "devastating" to Bedford. (*Id.* ¶ 33.) These assurances that Munksjö would have stock on hand in Altoona, Pennsylvania were of particular importance because of the closure of the Crocker mill and the resultant lack of an alternative source of the Product. (*Id.* ¶¶ 34-35.)

However, on July 7, 2016, a Munksjö representative sent an e-mail to Bedford informing Bedford that "the paper mill product this fall is very heavily booked" and suggested "the need for Bedford [to] have an approved second source of supply." (*Id.* ¶¶ 36-37.) After receiving this e-mail, Bedford actively searched for and was able to locate an alternative supplier of Product. (*Id.* ¶¶ 39-41.) Yet, this alternative supply of Product was "either more expensive than purchasing Product from Munksjö, or caused decreased efficiency in Bedford's production, or both." (*Id.* ¶ 42.)

In September 2016, Munksjö had less than 2 months' worth of Product available in Altoona and "purposely chose" to service other customers rather than provide Product at the lower, preferred pricing levels to Bedford. (*Id.* ¶¶ 44-45.)

## V. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which

it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[1] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## VI. Discussion

Munksjö has moved to dismiss Count III of the Amended Answer for failure to state a claim upon which relief may be granted. (*See* ECF No. 35.) Count III of the Amended

---

[1] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

Answer asserts a claim for negligent misrepresentation. (*See* ECF No. 34 ¶¶ 61-66.) Munksjö argues that the "gist of the action" doctrines precludes the pursuit of Count III. (*See* ECF No. 36.) This Court agrees.

Throughout their respective briefs, both parties offer extensive argument on application of the gist of the action doctrine to fraud in the performance versus fraud in the inducement claims under Pennsylvania law. (*See* ECF No. 36 at 3-5; ECF No. 38 at 3-7.) However, the Court preliminary notes that the parties' arguments in this regard are inapt because they do not align with the claim made out in Count III of the Amended Answer. Simply put, the Amended Answer seeks to state a claim for negligent misrepresentation — *not* for a fraud-based cause of action such as fraudulent misrepresentation. (*See* ECF No. 34 at 19-20.)

Pennsylvania law recognizes claims for fraudulent misrepresentation. *See Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (quoting *Overall v. Univ. of Pennsylvania*, 412 F.3d 492, 498 (3d Cir. 2005). However, Count III of the Amended Answer, even when all inferences are taken in favor of Bedford, cannot be reasonably construed to make out a claim for fraudulent misrepresentation or for any claim other than negligent misrepresentation. (*See* ECF No. 34 at 19-20.) To the contrary, Count III unequivocally purports to state a claim for negligent misrepresentation.

First, the heading associated with Count III clearly labels Count III as a claim for "NEGLIGENT MISREPRESENTATION," unmistakably identifying Munksjö's alleged wrongdoing as "negligent misrepresentations." (*See id.* at 19.)

Second, the paragraphs under Count III repeatedly refer to Munksjo's wrongdoing as "negligent misrepresentations." (*Id.*)

Third, the content of the allegations under Count III practically mirrors the elements required to make out a claim for negligent misrepresentation under Pennsylvania law. To establish a claim for negligent misrepresentation, Plaintiffs must allege "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt-Rite Contractors, Inc. v. The Architectural Studios*, 866 A.2d 270, 277 (Pa. 2005) (internal citation and quotation marks omitted). Closely aligning with these exact elements, Count III of the Amended Answer alleges that: (1) "Munksjo [sic] made misrepresentations of material facts" (ECF No. 34 ¶ 62); (2) Munksjö "made misrepresentations . . . regarding Munksjo's [sic] ability and/or willingness to perform its obligations to Bedford" (*id.*); (3) Munksjö acted "with the intent of inducing Bedford to cease its efforts to secure an alternate source of Product" (*id.*); (4) "Bedford justifiability relied on Munksjo's [sic] representations" which directly, proximately, and foreseeably caused injury to Bedford." (*Id.* ¶¶ 64-66.) This systematic alignment of elements and allegations further demonstrates that Count III can only be fairly interpreted to constitute a counterclaim for negligent misrepresentation.

Lastly, if Bedford were asserting a claim for fraudulent misrepresentation, then Federal Rule of Civil Procedure 9(b) would impose a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Namely, the Rule provides that "[i]n alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Court finds no such particularly in the allegations of the Amended Answer and, thus, further concludes that Count III of the Amended Answer seeks to make out a claim for only negligent misrepresentation.

Therefore, despite the considerable attention that both parties give to the divergent treatment of fraudulent performance and fraudulent inducement claims under Pennsylvania's iteration of the gist of the action doctrine, the Court concludes that many of these cited cases and principles are not particularly pertinent to the disposition of Munksjö's present Motion to Dismiss. Accordingly, rather than focusing on precedent involving fraud-based claims, the Court will adhere to and apply the gist of the action doctrine rule as articulated by the Pennsylvania Supreme Court's landmark case in *Bruno v. Erie Insurance Company*, 106 A.3d 48 (Pa. 2014) and its progeny—an analysis which results in the dismissal of Count III as barred by the gist of the action doctrine.

Pursuant to the gist of the action doctrine under Pennsylvania law, a party cannot "bring a tort claim for what is, in actuality, a claim for breach of contract." *Bruno*, 106 A.3d at 60. "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract— then the claim is to be viewed as one for breach of contract. *Id.* at 68. "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals . . . then it must be regarded as a tort." *Id.*; *see also Downs v. Andrews*, 639 F.

App'x 816 (3d Cir. 2016); *Dommel Prop. LLC v. Jonestown Bank and Trust Co.*, 626 F. App'x 361 (3d Cir. 2015); *Rogers v. Gentex Corp.*, 3:16-cv-137, 2018 WL 1370611 (M.D. Pa. Mar. 16, 2018); *Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421 (Pa. Super. Ct. 2016); *B.G. Balmer & Co. v. Frank Crystal & Company, Inc.*, 148 A.3d 454 (Pa. Super. Ct. 2016).

Here, Count III of the Amended Answer is barred by the gist of the action doctrine because the duty purportedly breached by Munksjö existed only because of the Agreement between Munksjö and Bedford and Count III does not involve the "violation of a broader social duty owed to all individuals." *Bruno*, 106 A.3d at 68. As discussed *supra* Part III, Bedford's Amended Answer raises three counterclaims against Munksjö: (1) breach of contract, (2) anticipatory breach of contract, and (3) negligent misrepresentation. (*See* ECF No. 34 at 16-20.) However, the negligent misrepresentation counterclaim in Count III fails to state a separate and distinguishable cause of action from the breach of contract and anticipatory breach of contract counterclaims in Count I and Count II, therein requiring dismissal under the gist of the action doctrine.

In Count III, Bedford alleges that Munksjö deceived Bedford into remaining in the Agreement by falsely suggesting that Munksjö would be able to satisfy the Agreement's requirements as to the availability of Product to Bedford. (*Id.* at 19.) This main allegation and the other allegations that make up Count III fail to state a distinct tort claim separate from the contract-based theories alleged in Count I and Count II of the Amended Answer. The factual allegations of Count III and the underlying theory of liability are inextricably intertwined with the facts of the contract-based counterclaims in Count I and Count II. *See Bengal Converting Servs., Inc. v. Dual Printing, Inc.*, Civil Action No. 11-6375, 2012 WL 831965,

at *2-*3 (E.D. Pa. Mar. 13, 2012) (citing *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, no. 06-3959, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30. 2006)).

Moreover, focusing on the Pennsylvania Supreme Court's articulation of the gist of the action doctrine, *Bruno* specifies that "the nature of the duty alleged to have been breached" is the "critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Bruno*, 106 A.3d at 68. In the present case, based on the allegations of the Amended Answer and all reasonable inferences in favor of Munksjö therefrom, Munksjö and Bedford owed each other no duties relevant to these allegations outside of those duties created by their contractual relationship through the Agreement.

In fact, the negligent misrepresentations that Munksjö allegedly made related to Munksjö's ability to perform under the terms of the Agreement—duties which Munksjö was obligated to perform only because of the Agreement. Bedford has not identified any broader, independent social duty outside of those duties created by the Agreement between Bedford and Munksjö on which to base a distinct tort claim. *See id.* Therefore, because Bedford can only establish that Munksjö owed it a duty through the contract—rather than because of the type of independent "social duty" required by the Pennsylvania Supreme Court in *Bruno* for a distinct, cognizable tort claim—the pursuit of Count III by Bedford is barred by the gist of the action doctrine. *See id.*

In sum, as currently stated in the Amended Answer, Count III alleges a counterclaim that is duplicative of Count I and Count II and seeks relief based on the violation of duties created by the Agreement itself—not a distinct, broader social duty, as

required by the Pennsylvania Supreme Court in *Bruno*. *See id.* Accordingly, this Court must dismiss Count III because it is barred by the gist of the action doctrine.

Lastly, the Court notes that, in its response brief, Bedford alternatively seeks leave to amend its counterclaims. (*See* ECF No. 38 at 11.) As stated in the Order accompanying this Memorandum Opinion, the Court grants Bedford leave to amend its counterclaims because, based on the information available to this Court, the Court is unable to assess whether further amendment of the counterclaims would be futile to remedy Count III's failure to state a distinct claim upon which relief can be granted. *See Campbell v. M&T Bank*, Case No. 3:16-cv-118, 2018 WL 401523, at \*12-\*13 (W.D. Pa. Jan. 12, 2018) (citing cases on granting or denying leave to amend based on futility).

## VII.   Conclusion

The Court grants Munksjö's Motion to Dismiss Count III because Count III is barred by the gist of the action doctrine as articulated by the Pennsylvania Supreme Court in *Bruno*. However, Bedford is granted leave to amend its counterclaims. Thus, this Court dismisses Count III of Bedford's amended answer without prejudice.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MUNKSJÖ PAPER AB, | ) | Case No. 3:16-cv-270 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| BEDFORD MATERIALS CO., INC., | ) | |
| Defendant. | ) | |

## ORDER

**NOW**, this 18th day of April 2018, upon consideration of Plaintiff's Motion to Dismiss Count III of Defendant's First Amended Answer, Affirmative Defenses, and Counterclaims (ECF No. 35), and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Count III of Defendant's First Amended Answer, Affirmative Defenses, and Counterclaims (ECF No. 35) is **GRANTED**. Accordingly, Count III of Defendant's First Amended Answer, Affirmative Defenses and Counterclaims is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant is **HEREBY GRANTED** leave to amend its First Amended Answer, Affirmative Defenses, and Counterclaims **on or before May 9, 2018.**

BY THE COURT

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE